<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MICHAEL COHAN,**<br><br>                  **Plaintiff,**<br><br>     v.<br><br>**ACME LIFT COMPANY L.L.C., and ABC COMPANIES 1-10,**<br><br>                  **Defendants.** | **Civil Action No. 20-11075 (CCC)**<br><br><br><br><br><br>**OPINION** |

<u>**FALK, U.S.M.J.**</u>

Before the Court is Defendant Acme Lift Company LLC's motion to transfer this case to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1404(a).  [ECF No. 4.]  Plaintiff, Michael Cohan, opposes the motion.  No oral argument is necessary.  *See* Fed. R. Civ. P. 78(b).  For the reasons set forth below, Defendant's motion to transfer venue is **GRANTED**.

<u>**BACKGROUND**</u>[1]

This is an age-based employment discrimination case brought pursuant to the New Jersey Law Against Discrimination, 10:5-1, *et seq*. ("NJLAD").  Defendant Acme Lift Company is an Arizona-based company that deals in the rental of air lifts and construction equipment to retailers.  (Compl., ¶¶ 3-4.)  Plaintiff began his employment

---

[1] This section is drawn from the parties' papers and is limited to information relevant to the current motion.  Some aspects of this background may be disputed.  Direct citations are sometimes omitted.

with Defendant in 2016, and served as the company's Regional Vice President, covering the Northeast Region, which spanned from Virginia to Maine. (Compl., ¶ 8.) Cohan's job responsibilities included, among other things, generating and increasing sales, as well as cultivating relationships with current and prospective clients. (*Id*.)

As part of his employment, Cohan signed a Confidentiality, Non-Disclosure, Non-Solicitation, Non-Competition, and Assignment Agreement (the "NDA"; executed December 20, 2018). (*See* Defendant's Answer and Counterclaim ¶ 3, Ex. A.) The NDA states that it will be governed by Arizona law. (*See id*., Ex. A.) In addition, it contains the following forum selection provision:

> <u>Jurisdiction and Venue</u>. Employee expressly, knowingly, and voluntarily consents to personal jurisdiction of the state and federal courts in Maricopa County, Arizona for ***any civil action relating to or arising out of this Agreement***, and the parties agree that any action must be filed exclusively in the state or federal court in Maricopa County, Arizona and that no action shall be filed in any other court. Employee waives any issues or defenses of personal jurisdiction for purposes of this provision.

(*See id*.) (bold and italics added.)

On May 11, 2020, about 4 years after he was hired, Cohan was terminated. He was 63 years old at the time. (Compl., ¶ 31.) Defendant contends that Plaintiff was terminated because of the impact of COVID-19 on Defendant's business operations; Plaintiff claims it was age-based discrimination. (Compl., ¶ 32.) Subsequent to his termination, Cohan entered into a severance agreement and executed a release of all claims, expressly including claims pursuant to the NJLAD. (*See* Defendant's Answer

and Counterclaim ¶ 17; Ex. B, Severance Agreement and Release, ECF No. 3.)² The Severance Agreement specifically incorporates the terms of the NDA. (*Id*. ¶ 18.) ("Notwithstanding anything to the contrary in this Agreement, Employee acknowledges that he has ongoing obligations pursuant to the NDA Agreement, and he hereby reaffirms such obligations."). The Severance Agreement provided a one-time lump sum payment of $6,653.76. (*Id.*) In addition, the Severance Agreement provided additional benefits that were contingent upon compliance with the NDA, including three payments of $3,458.67 (for a total of $10,376.01), plus unearned draws against commissions in the amount of $75,000. (*Id*., ¶ 20.). Plaintiff received and accepted the payments pursuant to the severance agreement and release.

Thereafter, Acme allegedly discovered that Cohan had breached the NDA and the Severance Agreement by, among other things, engaging in competitive activities while still employed by Acme. The alleged violations are set forth, at least in part, in emails sent from Cohan's Acme email account in February and March 2020, which are attached to Acme's Counterclaim. (*See* Counterclaim ¶¶ 27-30 & Exs. C-E.) Acme requested repayment of the release payments of $3,458.67, as well as the $75,000 in unearned commissions – but Cohan has not complied. (*Id.* ¶ 33.)

---

² The Severance Agreement and Release states: "By signing this Agreement, Employee agrees to **FULLY WAIVE AND RELEASE ALL CLAIMS**, without limitation . . . including **BUT NOT LIMITED TO**, any claim or proceeding arising under . . . **The New Jersey Law Against Discrimination**." (*See* Answer and Counterclaim, Ex. B, at 3-4) (bold emphasis in original; underline added).

On July 16, 2020, Cohan filed the present Complaint in New Jersey Superior Court, alleging age discrimination and retaliation in violation of the NJLAD.

On August 21, 2020, Acme removed the case to this Court based on federal diversity jurisdiction – present when the parties are completely diverse and more than $75,000 is in dispute. *See Wis Dep't of Corrections v. Schacht*, 524 U.S. 381 (1994).

On September 11, 2020, Acme filed an answer and four counterclaims. Acme's answer asserts various defenses, including that Plaintiff released any claims against Acme including any claims under the NJLAD. Also, Acme claims that Plaintiff's claims are barred or reduced under the after-acquired evidence doctrine. (Answer; Affirmative Defenses, pp. 1-2.)

Acme's counterclaims allege, *inter alia*, that Cohan breached his contractual obligations under the NDA and the Severance Agreements and seek return of the payments made in consideration of the Agreements along with other damages.

On September 11, 2020, Acme filed the present motion to transfer this case to the United States District Court for the District of Arizona, contending that the case is subject to the forum selection (and choice of law) provision in the NDA, and that the counterclaims invoking the NDA are compulsory. The essence of the motion is that a valid forum selection provision mandates transfer to Arizona pursuant to the Supreme Court's decision in *Atl. Marine Constr. Co. v. U.S. Dist Ct. for the W. Dist. Of Tex*, 571 U.S. 49 (2013).

On October 2, 2020, Plaintiff filed a motion to dismiss Count I of Acme's Counterclaim, which alleges breach of the NDA.

**Parties' Arguments on Transfer**

Acme contends that the case must be transferred to Arizona pursuant to the Supreme Court's decision in *Atlantic Marine*. Acme contends that Plaintiff's complaint is governed by the forum selection clause. Acme also contends that its Counterclaims relating to the breach of the NDA and Severance Agreement are compulsory counterclaims pursuant to Federal Rule of Civil Procedure 13, and since those Agreements must be litigated in this case, the forum selection provisions mandate an Arizona forum.

Cohan claims that his NJLAD claim is a non-contractual claim and is not implicated by the forum selection provision. His position is that he never agreed to litigate any non-contractual claims in Arizona, and that he should be free to pursue his NJLAD claim in the venue of his choice.

**LEGAL STANDARD**

28 U.S.C. § 1404(a) provides federal courts with authority to transfer a case to another district "where it may have been brought," when doing so is "[f]or the convenience of the parties and witnesses, or in "the interests of justice." *Id.* The purpose of the federal transfer statute is to "prevent the waste of 'time, energy and money' and to protect litigants, witnesses, and the public against unnecessary inconvenience and

expense." *Ricoh Co.. Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

There is no definitive formula or list of factors to consider when deciding a motion to transfer. *Landmark Fin. Corp. v. Fresenus Med. Care Holdings, Inc.*, 2010 WL 715454, at *2 (D.N.J. Mar. 1, 2010). However, in *Jumara v. State Farm Ins. Co.,* the Third Circuit articulated certain "public" and "private" interests implicated by Section 1404(a). *See* 55 F.3d 873 (3d Cir. 1995). Private interests include but are not limited to: (1) plaintiff's original choice of venue; (2) defendant's forum preference; (3) where the claim arose; (4) convenience to the parties in light of their financial and physical condition; (5) availability of witnesses in each of the fora; and (6) the location of books and records. *Id.* at 879. Public concerns include but are not limited to: (1) the ability of each forum to enforce the judgment; (2) practical considerations that would make trial more expeditious or inexpensive; (3) court congestion; (4) local interest in deciding the controversy; (5) public policies of each fora; and (6) familiarity with state law in diversity cases. *Id.*

Despite the above, the presence of a forum selection provision greatly changes the analysis. In *Atl. Marine*, the Supreme Court held, *inter alia*, that:

> (1) a valid forum selection clause is an important consideration in a Section 1404(a) analysis and that a case should usually be transferred to the district specified in the clause; and
>
> (2) when there is a valid forum selection clause, and a case is filed in a district other than the one specified in the clause, the court's Section 1404(a) transfer considerations change in three ways: [i] the plaintiff's choice of forum becomes immaterial; [ii] the parties' private interests—traditional transfer

6

>considerations—should not be evaluated, and should be deemed to weigh entirely in favor of the selected forum; and [iii] the original venue's choice of law rules do not apply.

*See* 134 S. Ct. at 581-82.  Post-*Atlantic Marine*, the presence of a valid forum selection provision will result in the transfer of a case to the designated forum in all but the most unusual cases.  *See Weichart Real Estate Affiliates, Inc. v. CKM 16, Inc.*, 2018 WL 652331, at *5 (D.N.J. Jan. 31, 2018) (presence of valid forum selection a "powerful consideration"); *see also In re Ryze Claims Solutions, LLC*, 968 F.3d 701, 711 (7th Cir. 2020) ("Neither [party nor lower court] identified any decision since *Atlantic Marine* in which a district court refused to enforce a valid forum selection agreement under § 1404(a) due to exceptional circumstances."); *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (forum selection provision compels transfer absent extraordinary circumstances).

## **ANALYSIS**

The issue to be decided is the appropriate forum for this litigation. The decision turns on whether the case is governed by the forum selection clause in the NDA mandating an Arizona forum.  If so, *Atlantic Marine* compels transfer.  As explained below, the Court concludes that the forum selection clause encompasses the dispute and the case must be transferred to Arizona.

No one challenges the validity of the forum selection clause in the NDA, which applies to "any civil action **relating to or arising out** of the Agreement."  Although not clearly articulated, the issue appears to be the scope of the clause and whether it should

7

be enforced.   Most of the briefing addresses a somewhat complicated conflict of laws analysis, which will be commented on below.  However, the Court concludes the result here is the same regardless of whether federal law, New Jersey law, or Arizona law is applied. Therefore, we begin with the reasons that the case in some way relates to and in other ways arises from the NDA with the Arizona forum selection agreement.

    Plaintiff's statutory claim does not arise out of the NDA, but there is no question that it relates to it.  This is demonstrated by the inescapable defense that Plaintiff settled and expressly released the NJLAD claim.  The signed release and severance agreement is attached to the Defendant's answer and counterclaim.  It is an extremely detailed agreement that is contingent on and subject to the NDA. In fact, the NDA is referenced in the agreement and release at least 9 times and will no doubt be implicated in the defense of the case.   Assuming the claim is found not to be released, the NDA will certainly be part of the defense of the case, in at least one way.  Defendant has asserted the after-acquired evidence defense which could bar or limit any damages.  The after-acquired evidence defense is based on the allegation that Plaintiff violated the NDA.

     Defendant's counterclaim not only relates to the NDA but directly and unambiguously <u>arises</u> <u>out</u> of it.  It is a breach of contract claim (and more) alleging a direct violation of the NDA (with the forum selection provision) and seeking damages including but not limited to the return of payments made under the release and severance agreement.  If the counterclaim is considered, the forum selection clause mandates transfer to Arizona.  The parties' discussion about the counterclaim is whether it is a

8

compulsory counterclaim under the federal rules. It is clearly compulsory, which is not really disputed by Plaintiff. But whether compulsory or not, the counterclaim is part of the case, it is inextricably intertwined and inseparable from the subject of the case—Plaintiff's employment and termination from Defendant. This demonstrates why the forum selection clause is implicated and why transfer is appropriate. Nevertheless, we will address Rule 13 for purposes of completeness.

(i) **<u>Compulsory Counterclaim</u>**

Federal Rule of Civil Procedure 13(a) requires a party to bring as a counterclaim "any claim that the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." *Id*. "Transaction or occurrence" is construed liberally to avoid the unnecessary expense inherent in a multiplicity of litigation. *See, e.g.*, *Bristol Farmers Mkt. & Auction Co. v. Arlen Realty & Dev. Corp.*, 589 F.2d 1214, 1221 (3d Cir. 1978) ("[T]he policy behind compelling the defendant to raise his compulsory counterclaim…is to enable the court to settle all related claims in one action, thereby avoiding a wasteful multiplicity of litigation on claims arising from a single transaction or occurrence."). Whether a counterclaim arises out of the same transaction or occurrence as the plaintiff's claims depends on whether there is a "logical relationship" between the claims, which exists:

> where separate trials on each of the claims would involve a substantial duplication of effort and time by the parties and the courts…Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties…

*Transam. Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389-90 (3d Cir. 2002).

 Here, there is a clear logical relationship between Plaintiff's affirmative claims, Defendant's defenses and Acme's counterclaim. Under the facts of this case and this employment relationship, addressing the claims separately would be almost impossible. It would definitely involve duplicative discovery and analysis and likely overlapping motion practice. The claims are part of the same litigation bundle between the parties and their failed employment relationship. Of note, Cohan contends that Acme's counterclaims should be dismissed for a lack of merit, but he does not dispute that they are compulsory counterclaims to be raised in this case. Also, Defendants cites to non-binding authority expressly finding that in discrimination cases, employer's counterclaims for mishandling trade secrets and the like are indeed, compulsory counterclaims. *See, e.g.*, *Klein v. London Star Ltd*, 26 F. Supp 2nd 689 (S.D.N.Y) (counterclaim for misappropriating trade secrets compulsory in age discrimination case).

 In sum, it is undisputed that the contract-based counterclaim is compulsory and thus the valid Arizona forum selection clause must be enforced via transfer under *Atlantic Marine*.

 **(ii)**   **Choice of Law Issues**

 The parties devote much of their briefing to discussing choice of law issues that in the final analysis have no bearing at all on the result. Both sides seem to agree that under the well-known *Erie* doctrine, federal courts sitting in diversity should apply state law to

substantive issues and federal law to procedural issues. *Erie Railroad v. Tompkins*, 304 U.S 64, 78 (1938). Since the forum selection clause is part of a contract, they conclude it is a substantive issue. The parties also seem to agree that as a case in federal court pursuant to federal diversity jurisdiction, the Court is to apply the forum state's choice of law provisions. *See Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017).

Defendant argues that Arizona law should apply because the parties' NDA agreement clearly states that Arizona law shall apply to the agreement, including the interpretation of the forum selection provision. *See supra* page 2. Cohan contends that New Jersey, the forum state's law should apply. Indeed, there is authority for both positions and much scholarly debate about the issue. *See* Symeon C. Symeonides, *What Law Governs Forum Selection Clauses*, 78 La. L. Rev. 1119 (2018)

Although not addressed by the parties, there is also authority suggesting that courts sitting in diversity should apply federal law to the decision of whether to enforce a forum selection clause. *Stewart Organization v. Ricoh Corp.*, 487 U.S. 22 (1988). In *Ricoh*, the court reasoned that 1404(a) controls the parties' forum dispute and 1404 is a procedural rule. The Court held that federal law governs a federal court's decision whether to give effect to a forum-selection provision. *Id*. at 32. *Atlantic Marine* expressly built upon the decision in *Ricoh* but did not decide whether state or federal law should govern forum selection clauses.

As it turns out, here, it does not matter which law, New Jersey, Arizona or federal applies. Although perhaps not co-extensive, there is significant overlap and no

one has shown a meaningful conflict between the potentially applicable laws.

As to the issue of the interpretation of the scope of the clause, Defendant persuasively argues that Arizona broadly interpret forum selection clauses like the one here. [3] Plaintiff's brief states "New Jersey Courts interpret the phrase 'relating to or arising out' of broadly, just as Arizona courts do." (Pl.'s Br. 8.) Under either state's law, it is clear all of the parties' claims would be deemed related

As to the enforceability of the forum selection clause, Plaintiff attempts to argue that New Jersey public policy somehow exempts discrimination claims from forum selection clauses. However, there is no authority for this assertion and the cases Plaintiff cites do not refer to venue at all, but rather to the issue of compelling arbitration. And even if there was such a policy (which there is not), the holding of the Supreme Court in *Ricoh* must be remembered. In *Ricoh*, the Court held that, despite the fact that Alabama law basically doesn't enforce forum selection clauses, the forum selection clause was in all respects enforceable as a matter of federal law. *Id*.

---

[3] *See* Def's Br. at 9, collecting cases: "Arizona courts broadly interpret forum selection clauses that contain language such as "arising out of or relating to" an agreement. *See, e.g.*, *Sun Valley Ranch 308 Ltd. P'ship v. Robson*, 231 Ariz. 287, 292, 294 P.3d 125, 130 (App. 2012) ("The arbitration clause at issue here encompasses 'any' controversies or disputes 'aris[ing] out of or relating to' the Partnership Agreement. It is the 'paradigm of a broad clause.'") (citing *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995)); *see Sun Valley Ranch*, 231 Ariz. at 292, 294 P.3d at 130 ("'Relating to' is broader than 'arising from.'"); *see also Hamblen v. Hatch*, 242 Ariz. 483, 489, 398 P.3d 99, 105 (2017); *Smith v. Logan*, 166 Ariz. 1, 2-3, 799 P.2d 1378, 1379-80 (App. 1990) (finding that language such as "claims or disputes arising out of, from or relating to this contract" was broad enough to encompass a fraudulent inducement claim and citing case law supporting the same).

### (iii) *Atlantic Marine*

At this point, the power of the *Atlantic Marine* takes over. As stated, when there is a forum selection provision in place, the private interests are no longer relevant, and the case should be transferred to the designated forum in all but the most exceptional cases. See 134 S. Ct. at 581-82.

*Atlantic Marine* compels transfer of this case to Arizona. The public factors are rarely – if ever – enough to overcome transfer. And they are not particularly close in this case. First, either forum would be able to enforce a judgment. Second, there are no articulated practical considerations that would make trial more expeditious in New Jersey. Third, court congestion would favor transfer to Arizona, as New Jersey is a far more congested district that has been operating under a long-standing judicial emergency. Fourth, while New Jersey might have an interest in deciding this case on behalf of a citizen, it is a private dispute between sophisticated parties and not a matter of overwhelming public policy or interest. Finally, a district judge in Arizona is more than capable of deciding questions of state law. As a result, the public factors are clearly insufficient to overcome the strong presumption that transfer is required by *Atlantic Marine*.

## CONCLUSION

For the reasons stated above, Defendant's motion to transfer is **GRANTED**. An appropriate Order will be entered. No action should be taken on the transfer of this case for 14 days. *See* L. Civ. R. 72.1(c)(1)(C).

s/Mark Falk
**MARK FALK**
**Chief U.S. Magistrate Judge**
